IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ABERNATHY, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs | ) | Civil Action No. 18-302 |
| | ) | |
| CITY OF PITTSBURGH, et al., | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff, John Abernathy, brings this pro se federal civil rights action pursuant to 42 U.S.C. § 1983, alleging that his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution were violated when his car was towed from a City of Pittsburgh street on January 11, 2018. Named as Defendants are the City of Pittsburgh, Ben Smith (an Assistant City Solicitor), the State of Pennsylvania and Mac's Towing of Homestead ("Mac's Towing").

Presently submitted for disposition are three motions to dismiss the Amended Complaint, filed by Defendants City of Pittsburgh and Ben Smith (together, the "City Defendants"), the State of Pennsylvania and Mac's Towing. All of the motions have been converted into motions for summary judgment and Plaintiff has been given an opportunity to respond to them. For the reasons that follow, the motions will be granted. In addition, Mac's Towing has filed a motion to lift the default that was entered against it and that motion will be granted. Finally, Plaintiff's motion to amend the Amended Complaint will be denied.

Facts

The Amended Complaint describes the claim as follows:

On January 11, 2018, in the City of Pittsburgh, Pennsylvania on Blackhawk St, Defendant, City of Pittsburgh executed the seizure of my property, a 2008 Toyota Prius. Macs Towing of Homestead towed and has held my property since this

point. The State of Pennsylvania Vehicle Code was used as a basis for seizing my property. The City of Pittsburgh and Mr. Smith when sent a certified letter indicating an intent to sue failed to provide proper due process for the seizure.

(Am. Compl. at 4.)[1] Plaintiff then states that:

At this time my property is still being held at Macs Towing in Homestead, the City of Pittsburgh and Ben Smith did not provide a timely or impartial fact finder of fact for the seizure of my property. The State of Pennsylvania by having a broad Vehicle Code without reasonable timetables for local municipalities to hold hearings with an impartial finder of fact, pre or timely post seizure hearings, enables an open ended seizure of my property.

Proper and timely due process is a basic tenet of the legal system that the government entities and Mr. Smith should reasonably have knowledge of. The Plaintiff asks for immediate release of his property from Macs Towing of Pittsburgh without financial encumberments and $5000 each from Defendants City of Pittsburgh, State of Pennsylvania, and Ben Smith.

(Id. at 4-5.)

The City indicates that, in late December 2017, the 3-1-1 Response Center received multiple citizen complaints that Plaintiff's vehicle, a blue 2008 Toyota Prius, had been sitting, with a flat tire, unmoved and apparently abandoned for more than a month on a City street. (ECF No. 9 Ex. 1.) Following up on these complaints, a police officer visited the scene and found that the vehicle's inspection sticker had expired a year previously, in December 2016, and the registration had expired about five months previously, on July 31, 2017. (ECF No. 9 Ex. 2.) Because both inspection and registration were more than 90 days overdue, the vehicle was presumed abandoned under Pennsylvania law.

Defendants state that Pennsylvania's Vehicle Code has provided for years that such an abandoned vehicle may be towed without prior notice to the owner or any lienholders. 75 Pa. C.S. § 7304.1(b). Plaintiff's vehicle was towed on January 11, 2018 by a salvor, Mac's Towing.

On February 7, 2018, Plaintiff wrote to the City Law Department, complaining about the

---

[1] ECF No. 2.

towing of his vehicle. He wrote that:

> If any type of reasonable due process had taken place prior to the seizure, I could have addressed the police departments concerns about my vehicle.
>
> Its my belief that the seizure and failure to provide pre or timely post seizure due process by the officer and the Pittsburgh Police Department violates my 4th, 5th, and 14th amendment rights under the United States Constitution.
>
> It's my hope that we can resolve the seizure of my property amicably. Within 72 business hours of your receipt, I expect that my 2008 Toyota Prius will be released to me without any financial encumberments. This is the only resolution that will stop and a filing against the Pittsburgh Police Department, the officer who seized my vehicle, and Macs Towing in federal court. (I will also consider finding an attorney to file a class action lawsuit against the department.)

(ECF No. 9 Ex. 3.)

Plaintiff indicates that, in response to this letter, he received a telephone call from Ben Smith, an Assistant City Solicitor. Plaintiff states that Smith left him a message in which he notified him that he (Smith) usually conducts hearings concerning towed cars, but that "most of the time the filers lose." He claims that Smith said he would be willing to discuss "other administrative options" and that Plaintiff became convinced that Smith "was not an impartial arbiter." (ECF No. 19 at 1.)

Defendants indicate that, after an abandoned vehicle is towed, the police submit an abandoned vehicle report to the Pennsylvania Department of Transportation (ECF No. 9 Ex. 2), which is then required to notify the last known registered owner and any lienholders. 75 Pa. C.S § 7305(a). The Department sent Plaintiff this letter on February 10, 2018. (ECF No. 19 Ex. B.)

The owner may then seek a hearing to be held by the municipality in question — in this case, such a hearing would typically be held by Defendant Ben Smith, an Assistant City Solicitor, who would serve as a hearing officer. 75 Pa. C.S. § 7305(b)(5). However, Plaintiff never requested such a hearing.

Procedural History

Plaintiff filed this action on March 9, 2018 (ECF No. 1), and he filed an Amended Complaint on March 28, 2018. The Complaint invokes 42 U.S.C. § 1983 and alleges that Defendants deprived Plaintiff of his Fifth and Fourteen Amendment rights to procedural due process with respect to the towing of his car. The Amended Complaint eliminated the Pittsburgh Bureau of Police, which had been named as a defendant in the original complaint, and made a few minor changes to the description of the claim. Jurisdiction is based on the federal civil rights claim asserted, 28 U.S.C. §§ 1331, 1343.

On May 10, 2018, the City Defendants filed a motion to dismiss (ECF No. 9). On May 14, 2018, the State of Pennsylvania filed a motion to dismiss (ECF No. 13), which incorporated the arguments made by the City Defendants and advanced the additional arguments that the State had no involvement in the events underlying the Amended Complaint and is entitled to immunity under the Eleventh Amendment. Plaintiff filed a response to both motions on June 6, 2018 (ECF No. 19) and the City Defendants filed a reply brief on June 8, 2018 (ECF No. 20). On August 28, 2018, an order was entered, converting the motions into motions for summary judgment and allowing Plaintiff to file supplemental briefing by September 18, 2018 and Defendants to file supplemental briefing by October 2, 2018 (ECF No. 21). No supplements to the briefs were submitted. However, on October 3, 2018, Plaintiff filed a document (ECF No. 27) that is being treated as a motion to amend the Amended Complaint and Defendants were directed to file a response by October 19, 2018 (ECF No. 29). In their response, Defendants contend that Plaintiff's proposed amendments do not address the arguments they present for dismissal. The Court agrees and therefore Defendants' motions will be granted and Plaintiff's motion to amend will be denied.

Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Defendants argue that: 1) the claim for a due process violation by the City fails for lack

of ripeness and lack of an alleged custom, policy or widespread practice; 2) the claim against Ben Smith should be dismissed based on lack of personal involvement and absolute and/or qualified immunity; 3) dismissal should be with prejudice—if necessary, after conversion into a motion for summary judgment under Rule 12(d); and 4) the State of Pennsylvania should be dismissed based on lack of involvement and Eleventh Amendment immunity.

Plaintiff responds that: 1) based on a letter he received from the Department, he believed that his vehicle registration was valid; 2) he sent a letter to the City indicating his interest in resolving the issue outside of court and in response, Ben Smith left him a message saying that he conducts the hearings and that most of the time the filers lose, thereby indicating that he was not an impartial arbiter; 3) Defendants provided no due process pre deprivation and their post deprivation remedies were not prompt and were designed for the City to profit from towing his car; and 4) he would like to add damages for the idling of his car for all this time and the cost of car insurance from January 2018 to the present.

In a reply brief, the City Defendants argue that Plaintiff's response provides no basis for rejecting their arguments; in fact, he concedes that his vehicle registration had elapsed and he has submitted the usual notice that they suggested he had received informing him how to request a hearing and warning him that his vehicle might be subject to disposal by a salvage company. They note that Plaintiff suggests that Smith was implying that the hearing he would provide would be "off the book," but respond that the law states that a transcript "shall be kept at the request of any party agreeing to pay the costs thereof." 2 Pa. C.S. § 553. The City Defendants contend that Plaintiff's argument that the City had a financial interest in seizing his property does not apply to the facts of this case. Specifically, Section 521.02 of the City Code allows for the City to place a lien on a vehicle and sell it at auction, but only where the City "has impounded a

vehicle pursuant to Section 521.01," which involves putting a "boot" on a vehicle with five or more unpaid tickets, which was not the reason for the towing of Plaintiff's abandoned vehicle. Finally, the City Defendants note that, although Plaintiff has attached evidence that he has continued to make insurance payments on the vehicle totaling more than $100 per month, his financial resources would be better spent retrieving his vehicle, via the established state and local legal processes, from Mac's Towing.

Civil Rights Claims

Plaintiff alleges a civil rights claim pursuant to § 1983. It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989). However, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's dominant' character. Rather, we examine each constitutional provision in turn." Soldal v. Cook County, Illinois, 506 U.S. 56, 70 (1992).

7

### Fifth Amendment

Plaintiff alleges that his due process rights under the Fifth Amendment have been violated. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." However, the "due process clause of the Fifth Amendment does not limit actions of state officials." Defeo v. Sill, 810 F. Supp. 648, 656 n.7 (E.D. Pa. 1993) (citing Bartkus v. Illinois, 359 U.S. 121, 124 (1959); Brock v. North Carolina, 344 U.S. 424, 426 (1953)). Plaintiff does not allege that any action by Defendants can be attributed to the federal government. Therefore, he cannot maintain a claim under the Fifth Amendment. See Herman v. Clearfield County, Pa., 836 F. Supp. 1178, 1183 (E.D. Pa. 1993), aff'd mem., 30 F.3d 1486 (3d Cir. 1994) (Fifth Amendment due process claim dismissed as redundant of Fourteenth Amendment claim).

### Fourteenth Amendment

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiff alleges that the actions of the Defendants violated the procedural due process clause by depriving him of his property without due process of law. Therefore, the Fourteenth Amendment is implicated in this case.

### Ripeness

The Court of Appeals for the Third Circuit has held that a "procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 423 (3d Cir. 2008) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). A procedural due process claim brought before the plaintiff avails

himself of administrative remedies is not ripe for review. Taylor Inv., Ltd. v. Upper Darby Township, 983 F.2d 1285, 1291-93 (3d Cir. 1993).

Plaintiff argues that the City provided no pre-deprivation remedy and that its post-deprivation remedy was not "prompt" and was compromised by Ben Smith's indication that he would not be a neutral arbiter. However, neither of these reasons supports Plaintiff's failure to avail himself of the administrative remedies provided.

Defendants point that, under state law: "Police officers or personnel designated by ordinance of a municipality shall process all vehicles presumed to be abandoned." 75 Pa. C.S. § 7303.1(a). An "abandoned vehicle" includes a vehicle left unattended on or along a highway or other public property for more than 48 hours which does not bear a valid registration plate, a current certificate of inspection and an ascertainable vehicle identification number. 75 Pa. C.S. § 102(1)(iii). The law provides that:

> (a) General rule.--Any and all vehicles reported abandoned to the police department and/or the appropriate designated municipal agency or department that handles the abandoned vehicle and cargo process shall be investigated within five business days to determine if the reported vehicle is abandoned as defined in section 102 (relating to definitions). Upon the completion of the investigation, any and all reported vehicles that satisfy the requirements of the definition of "abandoned vehicle" shall be officially declared abandoned and removed within ten business days by the police department or by an authorized salvor pursuant to police or municipality directions. Proper notification of the removal of the vehicle shall be sent pursuant to section 7305 (relating to notice to owner and lienholders of abandoned vehicles).
>
> (b) Certain vehicles.--Any and all vehicles found to be abandoned vehicles pursuant to subsection (a) and found to have a vehicle registration and an inspection sticker, both of which are expired for a period exceeding 90 days, shall be removed immediately by the police department or by an authorized salvor pursuant to police or municipality directions. Proper notification of the removal of the vehicle shall be sent pursuant to section 7305.

75 Pa. C.S. § 7304.1.

The notification provision states that:

9

(a) General rule.-- The department upon receipt of an abandoned vehicle information report shall notify by certified mail, return receipt requested, the last known registered owner of the vehicle and all lienholders of record that the vehicle is being held as abandoned.

(b) Contents of notice.--The notice shall:

(1) Describe the make, model, title number, vehicle identification number and registration plate number of the abandoned vehicle, if known.

(1.1) State the location of the police department that processed the vehicle.

(2) State the location where the vehicle is being held.

(3) Inform the owner and any lienholders of their right to reclaim the vehicle and its contents within 30 days after the date the notice was mailed at the place where the vehicle is being held by the salvor, upon payment of all towing, storage charges, the fee authorized in section 7306 (relating to payment of costs upon reclaiming vehicle) and penalties under section 3712(d)(1) (relating to abandonment and stripping of vehicles).

(4) State that the failure of the owner or lienholder to reclaim the vehicle and its contents is deemed consent by the owner to the destruction, sale or other disposition of the abandoned vehicle and its contents and of all lienholders to dissolution of their liens.

(5) Inform the owner and any lienholders of their right, within 30 days of the mailing date of the notice, to request from the appropriate police department a copy of the abandoned vehicle information report and of their right to a hearing conforming to the requirements of 2 Pa. C.S. Ch. 5 Subch. B (relating to practice and procedure of local agencies). The hearing shall be before a civilian officer or employee of the municipality in which the vehicle was reported as abandoned. If as a result of the hearing it is determined that the vehicle was not abandoned, the owner or lienholder may retrieve the vehicle within 48 hours without payment of any of the fees and penalties under paragraph (3).

75 Pa. C.S. § 7305.

Defendants assert that these procedures were followed in this case: the police were notified of an abandoned vehicle; they investigated and found that the registration and inspection on Plaintiff's vehicle were expired for over 90 days; they contacted a salvor, who towed the car on January 11, 2018; the police notified the Department, which sent a letter to Plaintiff on

10

February 10, 2018, informing him of his right seek a hearing before hearing officer; but he took no action to do so. Plaintiff does not dispute this sequence of events.[2]

Defendants note that these procedures under the Vehicle Code have been reviewed by several federal courts, which have found them to be sufficient and have therefore rejected challenges based on alleged procedural due process violations. Specifically, courts have concluded that:

> Pennsylvania law provides that all municipal agencies must provide a hearing whenever a municipality renders a final decision affecting property rights, see 2 Pa. Cons. Stat. § 553; City of Phila. Bd. of License & Inspection Review v. 2600 Lewis, Inc., 661 A.2d 20, 22 (Pa. Commw. Ct. 1995), and offers the opportunity for a hearing before a vehicle is finally declared abandoned, see 75 Pa. Cons. Stat. § 7305(b)(5) (stating that owner has right to hearing within thirty days of notice of abandoned vehicle) ….

Barshinger v. Buffington, 2004 WL 3607974, at *10 n.4 (M.D. Pa. June 10, 2004), aff'd mem., 131 F. App'x 783 (3d Cir. 2005); Draper v. Darby Tp. Police Dep't, 777 F. Supp. 2d 850, 857 (E.D. Pa. 2011) ("At least one prior court decision has suggested that the Pennsylvania Vehicle Code's notice requirements comply with due process") (citing Barshinger); Draper, 2011 WL 3240835, at *1 (E.D. Pa. July 29, 2011) (regarding plaintiff's claim "that he received no notice before his car was towed, in violation of his Fourteenth Amendment right to Due Process and" state law, noting "[t]his very claim was rejected in this court's March 7, 2011, opinion dismissing Draper's first complaint"), order amended on reconsideration, 2012 WL 93178 (E.D. Pa. Jan. 11, 2012). See also City of Los Angeles v. David, 538 U.S. 715 (2003) (rejecting the

---

[2] Plaintiff contends that he was given reason to believe that his registration was current, although the City Defendants note that the exhibit he provides (a print-out from a website, rather than a letter to him) offers several common reasons why registration may be suspended, including a lapse in insurance. (ECF No. 19 Ex. A.) Plaintiff has made hand-written notes in the margin stating that he switched insurance carriers and thus his insurance did not lapse. The Court need not resolve this dispute, as it is not appropriate for the Court to review the issue of whether Plaintiff's registration was validly suspended.

plaintiff's contentions that towing of vehicles without prior notice violated due process and that a hearing on an impounded vehicle had to be held within 48 hours; holding that a hearing held within 30 days met the 3 factors the Court had identified as necessary for due process). Plaintiff contends (ECF No. 30) that these cases are distinguishable based on the amount of interaction between the parties before the vehicles were towed, but this represents a distinction without a difference.

The Court concludes that Defendants have demonstrated that they complied with the proper procedures in this case, that these procedures have been held to pass constitutional muster, and that Plaintiff took no opportunity to request a hearing as he was instructed to do. Therefore, he cannot maintain a procedural due process challenge when he failed to follow the due process procedures made available to him.

Plaintiff's reference to the voicemail message left by Ben Smith does not alter this conclusion.[3] He does not allege—much less provide evidence of the allegation—that Smith precluded him from availing himself of the administrative procedures and Smith's alleged comments (the statement that most filers lose at their hearings and the vague reference to "other administrative options") do not demonstrate, as Plaintiff believes, that Smith was announcing that he would not be a neutral arbiter. Therefore, Plaintiff's claim is not ripe for review and Defendants' motion for summary judgment will be granted.

In addition, Defendants contend that Plaintiff cannot maintain a claim of municipal liability. The Court of Appeals has stated that:

> In Monell, the Supreme Court held that a municipality can be found liable

---

[3] On September 25, 2018, Plaintiff provided the Court with a CD allegedly containing a recording of Smith's voicemail message. The City Defendants have not conceded that this recording is accurate, nor have they challenged it. Rather, they have responded to Plaintiff's representation of what Smith said, and the Court will do the same.

12

under § 1983 only when the municipality itself causes the constitutional violation at issue. City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In order to impose liability on a local governmental entity for failing to preserve constitutional rights, a plaintiff bringing a § 1983 claim must establish that: (1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy "amount[ed] to deliberate indifference" to the plaintiff's constitutional right; and (4) the policy was the "moving force behind the constitutional violation." Id. at 389-91, 109 S.Ct. 1197 (internal quotation marks omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Vargas v. City of Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015) (citing Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978)).

"It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." Mulholland v. Government Cty. of Berks, Pa., 706 F.3d 227, 238 n.15 (3d Cir. 2013). As explained above, Plaintiff cannot maintain his procedural due process claim because he failed to take advantage of available state administrative remedies. In addition, Defendants argue that Plaintiff has not pleaded the existence of a "policy," that is, "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Monell, 436 U.S. at 690; or a "custom," that is, governmental action that "has not received formal approval through the body's official decisionmaking channels," id. at 691. His one-time incident could not provide a basis for holding the City liable for a policy or custom. See Brown v. City of Pittsburgh, 586 F.3d 263, 292-93 (3d Cir. 2009).

Liability of Ben Smith

The City Defendants argue that Plaintiff fails to cite any personal involvement of Ben Smith in the seizure of his vehicle or the deprivation of his due process rights. Plaintiff responds that Smith left him a message suggesting that he would not receive an impartial hearing. The City Defendants reply that this was not a reasonable inference on Plaintiff's part from Smith's

13

message and that, in any event, it did not make the hearing option unavailable, which is the point at issue.

As explained above, Plaintiff's interpretation of Smith's message does not provide him with an excuse from following the available procedures. Therefore, his argument is rejected.

Eleventh Amendment Immunity

The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has stated that the presupposition confirmed by the Eleventh Amendment is that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (internal citation omitted).

> Therefore, unless Congress has "specifically abrogated" the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir.1996); id. at 694 n. 2 ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.").

Christ the King Manor, Inc. v. Secretary U.S. Dep't of Health & Human Servs., 730 F.3d 291, 318 (3d Cir. 2013). A motion to dismiss on the ground of Eleventh Amendment immunity "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." Blanciak, 77 F.3d at 694 n.2.

The Court of Appeals for the Third Circuit has indicated that:

> Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law. The third exception ... is the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.714 (1908).

14

Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 1 Pa. C.S. § 2310; 42 Pa. C.S. § 8521(b); Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 227 (3d Cir. 2000). In addition, the Supreme Courts has held that § 1983 does not abrogate states' sovereign immunity. Quern v. Jordan, 440 U.S. 332, 339-46 (1979). Finally, Plaintiff alleges no claims for injunctive relief against individual state officers. Rather, his rationale for including the State of Pennsylvania in this case appears to be that state laws were invoked to tow his car. This basis does not fall within any recognized exception. His claims against the State of Pennsylvania are barred by Eleventh Amendment immunity.

### Plaintiff's Motion to Amend

On October 3, 2018, Plaintiff filed a document (ECF No. 27) that is being treated as a motion to amend the Amended Complaint. Plaintiff indicates that he wishes to amend the pleadings "to ask for an immediate release of my property, so it can be inspected by a qualified mechanic for damage caused by the defendant and $5000 in punitive damages." On October 15, 2018, Defendants filed a response to Plaintiff's motion to amend (ECF No. 30). Defendants contend that Plaintiff's proposed amendment does not fix the defects that they identified in their motion to dismiss (which has been converted to a motion for summary judgment). They are correct: regardless of how much damage the vehicle sustained while it was held by Mac's Towing, Plaintiff still failed to utilize available administrative remedies, which means that he cannot maintain a procedural due process claim in this case. A court should freely give leave to amend a complaint when justice so requires. Fed.R.Civ.P. 15(a)(2). "Leave to amend may be denied, however, if amendment would be futile. An amendment is futile if the amended

complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) (citation omitted). Therefore, his motion to amend will be denied.

Mac's Towing

As noted above, Mac's Towing did not respond to the Complaint and default was entered against it by the Clerk of Court on May 14, 2018 (ECF No. 15). At a hearing held on September 20, 2018, John McClaren appeared and explained that: he was the owner of Mac's Towing, which is a sole proprietorship;[4] he towed Plaintiff's vehicle as directed by the City; subsequently, when Plaintiff failed to take any action to redeem his vehicle even after being notified, the proper procedures were followed to transfer title to the vehicle to Mac's Towing; when he received notice of this case having been filed against Mac's Towing, he attempted to obtain counsel, but could not find anyone willing to take the case for a retainer of less than $7500. Plaintiff admitted that he did not utilize any administrative proceedings to challenge the towing of his vehicle.

In a response filed on October 15, 2018, Mac's Towing indicated that: on January 11 2018, it was ordered to tow Plaintiff's vehicle, which had a flat tire and an expired inspection and Form 952 was mailed to the Department; on January 23, 2018, Plaintiff came to Mac's Towing and stated that he wanted possession of his vehicle but that he was not going to issue payment; on February 10, 2018, a registered letter was sent from the Department notifying Plaintiff that he had 30 days from the date of the letter to retrieve his vehicle or he would lose

---

[4] Because Mac's Towing is an unincorporated sole proprietorship, it can appear in Court through its sole proprietor and does not have to obtain counsel. See Kamdem-Ouaffo v. Task Mgmt., Inc., 2018 WL 3360762, at *8 (D.N.J. July 9, 2018) (citing RZS Holdings AVV v. PDVSA Petroleo S.A., 506 F.3d 350, 354 n.4 (4th Cir. 2007)). See also Lattanzio v. COMTA, 481 F.3d 137, 139-40 (2d Cir. 2007); National Independent Theatre Exhibition, Inc. v. Buena Vista Dist. Co., 748 F.2d 602, 610 (11th Cir. 1984). However, as indicated in the text, counsel has now entered his appearance on behalf of this defendant.

16

possession of it; on March 13, 2018, Form MV956 was sent to the Department to dispose of the vehicle; on March 28, 2018, Plaintiff filed this case seeking release of his vehicle but Mac's Towing was unaware that any legal action had been taken. (ECF No. 31.)

On October 26, 2018, counsel entered his appearance on behalf of Mac's Towing and filed a motion for extension of time to respond to the Amended Complaint (ECF Nos. 33, 34). This motion was granted and on November 15, 2018, Mac's Towing filed a motion to set aside the default (ECF No. 39) and a motion to dismiss or, in the alternative, for summary judgment (ECF No. 37). Mac's Towing notes that it never received the original complaint and that Plaintiff executed a return of service indicating that he served the Amended Complaint on Mac's Towing on April 13, 2018. Further, it repeats that, on March 13, 2018, it sent Form MV956 to the Department for authorization to dispose of the vehicle and that, in response, the Department issued a Certificate of Salvage for a vehicle transferring ownership of the vehicle to Mac's Towing (ECF No. 37 Exs. A, B). On December 3, 2018, Plaintiff submitted responses to Mac's Towing's motions (ECF Nos. 48, 49), but these responses do not address the relevant arguments made by Mac's Towing. The Court has taken them into consideration, but they do not alter the result.

A court may set aside an entry of default for good cause shown. See Fed.R.Civ.P. 55(c). In making this determination, the court should consider whether: 1) the plaintiff will be prejudiced if the default is set aside; 2) the defendant has a meritorious defense; and 3) the default was a product of the defendant's culpable or inexcusable neglect. Dizzley v. Friends Rehab. Program, Inc., 202 F.R.D. 146, 147 (E.D. Pa. 2001). Moreover, the entry of default is not favored, and the court should employ a "standard of liberality" that resolves all claims in favor of the defaulting party. Id. (citing Gross v. Stereo Component Syst., 700 F.2d 120, 122 (3d Cir.

1983); In re Arthur Treacher's Franchise Litig., 92 F.R.D. 398, 415 (E.D. Pa. 1981)).

Mac's Towing argues that: Plaintiff will not be prejudiced by setting aside the default because he will simply have to go forward with the merits of the case; that it has a meritorious defense in that Plaintiff does not allege any culpable conduct against it (only that it was following proper procedures); and that there is no evidence that Mac's Towing acted with dilatory intent in failing to respond to the initial complaint.

The Court concludes that Mac's Towing has demonstrated good cause for its failure to respond to the Complaint and sets aside the default that was entered against it on May 14, 2018: Plaintiff will not be prejudiced by having to go forward with the merits of the case; Mac's Towing has meritorious defenses (both those articulated by the other defendants and its observation that Plaintiff asserts no culpable conduct against it) and there is no evidence that it acted with dilatory intent.

For all the reasons cited above, Mac's Towing is also entitled to summary judgment on Plaintiff's claims: it followed the appropriate state administrative procedures with respect to Plaintiff's vehicle, these procedures have been found to satisfy procedural due process, and Plaintiff made no attempt to comply with the procedures available to him to challenge the towing of his vehicle or to reclaim it. In addition, as Mac's Towing notes, Plaintiff does not even allege that Mac's Towing engaged in any culpable activity because it followed the prescribed procedures. Plaintiff's challenges to these procedures do not implicate this private entity that followed them.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ABERNATHY, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs | ) | Civil Action No. 18-302 |
| | ) | |
| CITY OF PITTSBURGH, et al., | ) | |
|     Defendants. | ) | |

## ORDER

AND NOW, this 6th day of December, 2018, for the reasons cited in the Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment, filed on behalf of the City of Pittsburgh and Ben Smith (ECF No. 9), treated as a motion for summary judgment, is granted.

IT IS FURTHER ORDERED that the Motion to Dismiss for Failure to State a Claim filed on behalf of the State of Pennsylvania (ECF No. 13), treated as a motion for summary judgment, is granted.

IT IS FURTHER ORDERED that the motion to set aside the default entered against Mac's Towing of Homestead (ECF No. 39) is granted and the default is set aside.

IT IS FURTHER ORDERED that the motion to dismiss or, in the alternative, for summary judgment, filed on behalf of Mac's Towing of Homestead (ECF No. 37), treated as a motion for summary judgment, is granted.

IT IS FURTHER ORDERED that the motion to amend the Amended Complaint filed by John Abernathy (ECF No. 27) is denied.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure if the plaintiff desires to appeal from this Order he must do so within thirty

(30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge